UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TRICILLA GRIFFIN, individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act,<br><br>            Plaintiff,<br><br>    v.<br><br>CONSOLIDATED COMMUNICATIONS, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>            Defendant. | No. 2:21-cv-0885 WBS KJN<br><br><br>ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

----oo0oo----

        Plaintiff Tricilla Griffin, individually and on behalf of all other similarly situated employees, brought this putative class action against defendant Consolidated Communications alleging wage and hour violations under California law.  (See First Am. Compl. ("FAC") (Docket No. 1-1).)  Before the court is plaintiff's unopposed motion for preliminary approval of a class

1

action settlement.  (See Mot. for Prelim. Approval ("Mot.")
(Docket No. 27), Def.'s Notice of Non-Opposition (Docket No.
31).)

I.   Background and Proposed Settlement

Defendant Consolidated Communications employed
plaintiff and other class members as hourly-paid or non-exempt
employees.  (FAC at ¶ 24.)  Plaintiff brought this action
alleging: (1) failure to pay minimum and final wages; (2) failure
to timely pay wages; (3) failure to pay overtime wages; (4)
failure to pay meal and rest period premiums; (4) failure to
provide compliant wage statements; (5) failure to keep compliant
payroll records; (6) failure to reimburse business expenses; (7)
violation of California's Business and Professions Code, Cal. §
17200, et seq.; and (8) violation of California's Private
Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, et
seq. (See FAC.)

The parties propose a gross settlement amount of
$800,000, which includes the following: (1) payments to
individual class members based on their number of weeks worked;
(2) a $7,500 incentive award to plaintiff; (3) attorneys' fees of
35% of the gross settlement amount, or $280,000, and
reimbursement of litigation costs and expenses of no more than
$24,000; (4) settlement administration costs of no more than
$15,000; and (5) $200,000 for PAGA penalties, of which 75% will
be distributed to the Labor and Workforce Development Agency
("LWDA") and 25% will be distributed to individual class members.
(See Ex. 1 to Takvoryan Decl. ("Settlement Agreement") (Docket
No. 27-1 at 24-53).)

2

1   II.   Discussion

2              Federal Rule of Civil Procedure 23(e) provides that

3   "[t]he claims, issues, or defenses of a certified class may be

4   settled . . . only with the court's approval."  Fed. R. Civ. P.

5   23(e).  This Order is the first step in that process and analyzes

6   only whether the proposed class action settlement deserves

7   preliminary approval.  See Murillo v. Pac. Gas & Elec. Co., 266

8   F.R.D. 468, 473 (E.D. Cal. 2010) (Shubb, J.).  Preliminary

9   approval authorizes the parties to give notice to putative class

10  members of the settlement agreement and lays the groundwork for a

11  future fairness hearing, at which the court will hear objections

12  to (1) the treatment of this litigation as a class action and (2)

13  the terms of the settlement.  See id.; Diaz v. Tr. Territory of

14  Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989).  The court

15  will reach a final determination as to whether the parties should

16  be allowed to settle the class action on their proposed terms

17  after that hearing.

18              Where the parties reach a settlement agreement prior to

19  class certification, the court must first assess whether a class

20  exists.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

21  "Such attention is of vital importance, for a court asked to

22  certify a settlement class will lack the opportunity, present

23  when a case is litigated, to adjust the class, informed by the

24  proceedings as they unfold."  Id. (quoting Amchem Prods. Inc. v.

25  Windsor, 521 U.S. 591, 620 (1997)).  The parties cannot "agree to

26  certify a class that clearly leaves any one requirement

27  unfulfilled," and consequently the court cannot blindly rely on

28  the fact that the parties have stipulated that a class exists for

3

1   purposes of settlement.  See Amchem, 521 U.S. at 621-22.

2          "Second, the district court must carefully consider

3   'whether a proposed settlement is fundamentally fair, adequate,

4   and reasonable,' recognizing that '[i]t is the settlement taken

5   as a whole, rather than the individual component parts, that must

6   be examined for overall fairness . . . '"  Staton, 327 F.3d at

7   952 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

8   Cir. 1998)), overruled on other grounds by Wal-Mart Stores, Inc.

9   v. Dukes, 564 U.S. 338 (2011).  District courts "review and

10  approve" settlement of PAGA claims under a similar standard.  See

11  Cal. Lab. Code § 2669(k)(2); Jordan v. NCI Grp., Inc., No. cv-

12  161701 JVS SP, 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018)

13  (collecting cases); Ramirez v. Benito Valley Farms, LLC, No. 16-

14  cv-04708 LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017).

15      A.   Class Certification

16          The parties define the proposed class as "[a]ll current

17  and former hourly-paid or non-exempt employees who worked for

18  Defendant within the State of California at any time during the

19  period from February 24, 2017 through March 23, 2022 ["Class

20  Period"]."[1]  (Mot. at 9; Settlement Agreement at 2.)

21          To be certified, the putative class must satisfy the

22  requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

23  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

24          1.   Rule 23(a)

25          Rule 23(a) restricts class actions to cases where: "(1)

26  the class is so numerous that joinder of all members is

27

28          [1] For purposes of the PAGA claim, the relevant time period
    is February 19, 2020 to March 23, 2022 ("PAGA Period").

4

impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation]." See Fed. R. Civ. P. 23(a).

### a.   Numerosity

"A proposed class of at least forty members presumptively satisfies the numerosity requirement." Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450, 456 (C.D. Cal. 2012), vacated on other grounds, 596 F. App'x 579 (9th Cir. 2015). See also, e.g., Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger, J.) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."). Here, plaintiff estimates that the proposed class will contain 274 members. (See Mot. at 9, 12; Decl. of Ovsanna Takvoryan ("Takvoryan Decl.") (Docket No. 27-1) at ¶ 9.) This more than satisfies the numerosity requirement.

### b.   Commonality

Commonality requires that the class members' claims "depend upon a common contention" that is "capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350. "[A]ll questions of fact and law need not be common to satisfy the rule," and the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the

class." <u>Hanlon</u>, 150 F.3d at 1019. "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d 538, 544 (9th Cir. 2013) (internal citation and quotation marks omitted).

Here, the claims implicate common questions of law and fact because they are premised on policies that applied to all class members equally. All class members were hourly-paid or non-exempt employees of defendant between February 24, 2017, and March 23, 2022. (<u>See</u> FAC at ¶ 26; Mot. at 9.) As a result, the class members share several common factual questions surrounding the existence of alleged wage and hour policies (including failure to pay full wages, failure to provide overtime compensation, and deprivation of meal and rest periods), and several common legal questions concerning whether said policies violated California law. (<u>See</u> FAC at ¶ 16.)

Generally, "challeng[ing] a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation." <u>Ontiveros v. Zamora</u>, No. 2:08-cv-567 WBS DAD, 2014 WL 3057506, at *5 (E.D. Cal. July 7, 2014). Even if individual members of the class will be entitled to different amounts of damages because, for instance, they were denied fewer meal and rest breaks than other employees or had their time rounded down less often than other employees, "the presence of individual damages cannot, by itself, defeat class certification." <u>Leyva</u>, 716 F.3d at 514 (quoting <u>Wal-Mart Stores</u>, 564 U.S. at 362). Accordingly, these common questions of law and fact satisfy the commonality requirement.

c.   Typicality

Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." Hanlon, 150 F.3d at 1020.  The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

The named plaintiff and the other class members were all hourly-paid or non-exempt employees of defendant.  (FAC at ¶ 26.)  Plaintiff and the other class members were all allegedly subject to the same policies and practices in question, including failure to pay full wages, failure to provide overtime compensation, and deprivation of meal and rest periods.  (FAC ¶ 16.)  Although the facts might differ for individual class members, the basis for their injuries and the parties purportedly responsible for those injuries are the same.  The proposed class therefore meets the typicality requirement.

d.   Adequacy of Representation

To resolve the question of adequacy, the court must consider two factors: (1) whether the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) whether the named plaintiff and her counsel will vigorously prosecute the action on behalf of the class.  In re Hyundai and Kia Fuel Econ. Litig., 926 F.3d 539, 566 (9th Cir. 2019).

1                       i.   Conflicts of Interest

2                 There do not appear to be any conflicts of interest for

3       purposes of preliminary approval.  The named plaintiff's

4       interests are generally aligned with those of the putative class

5       members, who suffered injuries similar to those suffered by the

6       named plaintiff.  See Amchem, 521 U.S. at 625-26 ("[A] class

7       representative must be part of the class and possess the same

8       interest and suffer the same injury as the class members.").

9                 The settlement would provide an incentive award of

10      $7,500 to the named plaintiff.  (Mot. at 21.)  While the

11      provision of an incentive award raises the possibility that the

12      named plaintiff's interest in receiving that award will cause

13      their interests to diverge from the class's interest in a fair

14      settlement, the Ninth Circuit has specifically approved the award

15      of "reasonable incentive payments."  Staton, 327 F.3d at 977-78.

16      The court, however, must "scrutinize carefully the awards so that

17      they do not undermine the adequacy of the class representatives."

18      Radcliffe v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th

19      Cir. 2013).

20                Plaintiff's counsel estimates that the net settlement

21      amount will be $323,500, to be allocated pro rata to class

22      members based on the number of weeks worked during the Class

23      Period.  (Mot. at 13.)  While individual awards to class members

24      will vary, the net settlement amount divided evenly between 274

25      class members results in an average of $1,180 per class member.

26      As such, plaintiff's proposed award of $7,500 represents

27      significantly more than other class members will receive.

28      Further, the payment represents approximately 0.94% of the

1   $800,000 gross settlement amount.  The proposed incentive payment

2   therefore gives the court pause, as an incentive payment

3   constituting one percent of the gross settlement amount is

4   "unusually high."  See Ontiveros v. Zamora, 303 F.R.D. 356, 365

5   (E.D. Cal. 2014) (Shubb, J.) (collecting cases).  See also Roe v.

6   Frito-Lay, Inc., No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D.

7   Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively

8   reasonable' in the Ninth Circuit.")

9         For purposes of preliminary approval, the incentive

10  award does not appear so disproportionate as to render plaintiff

11  an inadequate class representative.  However, the court is not

12  satisfied that the efforts and time commitment described by

13  plaintiff (see Decl. of Tricilla Griffin (Docket No. 27-2) at ¶¶

14  3-6) justify the incentive amount.  In her motion for final

15  approval, if plaintiff does not reduce the amount of her

16  requested reward she should be prepared to present further

17  evidence of her substantial efforts taken as class representative

18  or other relevant personal sacrifices to better justify the high

19  incentive award requested.

20              ii.  Vigorous Prosecution

21        The second portion of the adequacy inquiry examines the

22  vigor with which the named plaintiff and her counsel have pursued

23  the class's claims.  "Although there are no fixed standards by

24  which 'vigor' can be assayed, considerations include competency

25  of counsel and, in the context of a settlement-only class, an

26  assessment of the rationale for not pursuing further litigation."

27  Hanlon, 150 F.3d at 1021.

28        Here, class counsel appear to be experienced employment

9

1  and class action litigators fully qualified to pursue the
2  interests of the class.  (See Takvoryan Decl. at ¶¶ 2-7.)  This
3  experience, coupled with the work performed thus far (see id. at
4  ¶¶ 11-14), suggest that class counsel are well-equipped to handle
5  this case.  Further, plaintiff's counsel seem to have conducted
6  thorough factual investigation and legal research, and fully
7  considered the strengths and weaknesses of this case in deciding
8  to accept the terms of the proposed settlement agreement.  (See
9  id. at ¶¶ 11-14, 19-20.)  The court finds no reason to doubt that
10 plaintiff's counsel is well qualified to conduct the proposed
11 litigation and assess the value of the settlement.  Accordingly,
12 the court concludes that Rule 23(a)'s adequacy requirement is
13 satisfied for the purpose of preliminary approval.

14             2.   Rule 23(b)

15             After fulfilling the threshold requirements of Rule
16 23(a), the proposed class must satisfy the requirements of one of
17 the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.
18 Plaintiff seeks certification under Rule 23(b)(3), which provides
19 that a class action may be maintained only if (1) "the court
20 finds that questions of law or fact common to class members
21 predominate over questions affecting only individual members" and
22 (2) "that a class action is superior to other available methods
23 for fairly and efficiently adjudicating the controversy."  Fed.
24 R. Civ. P. 23(b)(3).

25             a.   Predominance

26             "The predominance analysis under Rule 23(b)(3) focuses
27 on 'the relationship between the common and individual issues' in
28 the case and 'tests whether proposed classes are sufficiently

10

1  cohesive to warrant adjudication by representation.'"  <u>Wang</u>, 737
2  F.3d at 545 (quoting <u>Hanlon</u>, 150 F.3d at 1022).

3       As discussed above, the claims brought by the proposed
4  settlement class all arise from defendant's same conduct with
5  respect to wage and hour policies for hourly-paid and non-exempt
6  employees.  (<u>See</u> FAC at ¶ 16).  The class claims thus demonstrate
7  a "common nucleus of facts and potential legal remedies" that can
8  properly be resolved in a single adjudication.  <u>See</u> <u>Hanlon</u>, 150
9  F.3d at 1022.  Although there are differences in the facts
10  pertaining to class members and the amount of injury sustained,
11  there is no indication that those variations are "sufficiently
12  substantive to predominate over the shared claims."  <u>See</u> <u>Murillo</u>,
13  266 F.R.D. at 476 (quoting <u>Hanlon</u>, 150 F.3d at 1022).
14  Accordingly, the court finds common questions of law and fact
15  predominate over questions affecting only individual class
16  members.

17            b.   <u>Superiority</u>

18       Rule 23(b)(3) sets forth four non-exhaustive factors
19  that courts should consider when examining whether "a class
20  action is superior to other available methods for fairly and
21  efficiently adjudicating the controversy."  Fed. R. Civ. P.
22  23(b)(3).  They are: "(A) the class members' interests in
23  individually controlling the prosecution or defense of separate
24  actions; (B) the extent and nature of any litigation concerning
25  the controversy already begun by or against class members; (C)
26  the desirability or undesirability of concentrating the
27  litigation of the claims in the particular forum; and (D) the
28  likely difficulties in managing a class action."  <u>Id.</u>  The

1   parties settled this action prior to certification, making

2   factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D. at 477

3   (citing Amchem, 521 U.S. at 620).

4          Rule 23(b)(3) is concerned with the "vindication of the

5   rights of groups of people who individually would be without

6   effective strength to bring their opponents into court at all."

7   Amchem, 521 U.S. at 617.  When, as here, class members'

8   individual recovery is relatively modest, the class members'

9   interests generally favors certification.  Zinser v. Accufix Res.

10  Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001).  Further, the

11  court is unaware of any concurrent litigation regarding the

12  issues in this case.  Given that no class member has initiated

13  any competing action in the nearly two years since this case was

14  filed, it is also unlikely that other individual class members

15  have an interest in controlling the prosecution of this action or

16  related actions--although objectors at the fairness hearing may

17  reveal otherwise.  See Alberto v. GMRI, Inc., 252 F.R.D. 652, 664

18  (E.D. Cal. 2008) (Shubb, J.).  Accordingly, the class action

19  device appears to be the superior method for adjudicating this

20  controversy.

21          3.   Rule 23(c)(2) Notice Requirements

22          If the court certifies a class under Rule 23(b)(3), it

23  "must direct to class members the best notice that is practicable

24  under the circumstances, including individual notice to all

25  members who can be identified through reasonable effort."  Fed.

26  R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

27  content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

28  651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

417 U.S. 156, 172–77 (1974)).  Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The parties have jointly selected ILYM Group ("ILYM") to serve as the Settlement Administrator.  (Settlement Agreement at 13.)  Pursuant to the notice plan, defendant will provide ILYM with the class contact information and data within fifteen business days of the court's order granting preliminary approval.  (Id. at 14.)  Within ten days of receiving the class information from defendant, ILYM shall mail the class notice to all class members using the most current mailing addresses available.  (Id.)

Plaintiff's counsel has provided the court with a proposed notice to class members.  (See Ex. A to Settlement Agreement (Docket No 27-1 at 54-60) at 1-4.)  It explains the proceedings, defines the scope of the class, and explains what the settlement provides and how much each class member can expect to receive in compensation.  (See id. at 55-57.)  The notice further explains the opt-out procedure, the procedure for objecting to the settlement, and the date and location of the final approval hearing.  (See id. at 58-59.)  The content of the notice therefore satisfies Rule 23(c)(2)(B).  See Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting Mendoza v. Tucson Sch. Dist.

1  No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

2       While the court is satisfied by the content of the

3  proposed notice, the court notes that a single mailed notice is

4  unlikely to provide sufficient notice.  See Roes, 1-2 v. SFBSC

5  Mgmt., LLC, 944 F.3d 1035, 1045-46 (9th Cir. 2019).  It is

6  advisable that the Settlement Administrator undertake additional

7  measures "reasonably calculated, under all the circumstances," to

8  apprise all class members of the proposed settlement.  See id. at

9  1047 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S.

10  306, 315 (1950)).

11

12       B.   Preliminary Settlement Approval

13       After determining that the proposed class satisfies the

14  requirements of Rule 23(a) and (b), the court must determine

15  whether the terms of the parties' settlement appear fair,

16  adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon,

17  150 F.3d at 1026.  This process requires the court to "balance a

18  number of factors," including "the strength of the plaintiff's

19  case; the risk, expense, complexity, and likely duration of

20  further litigation; the risk of maintaining class action status

21  throughout the trial; the amount offered in settlement; the

22  extent of discovery completed and the stage of the proceedings;

23  the experience and views of counsel; the presence of a

24  governmental participant; and the reaction of the class members

25  to the proposed settlement."  Hanlon, 150 F.3d at 1026.

26       Because some of these factors cannot be considered

27  until the final fairness hearing, at the preliminary approval

28  stage "the court need only determine whether the proposed

settlement is within the range of possible approval," <u>Murillo</u>,
266 F.R.D. at 479 (quoting <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621
n.3 (7th Cir. 1982)), and resolve any "glaring deficiencies" in
the settlement agreement before authorizing notice to class
members, <u>Ontiveros</u>, 2014 WL 3057506, at *12  (citing <u>Murillo</u>,
266 F.R.D. at 478).  This generally requires consideration of
"whether the proposed settlement discloses grounds to doubt its
fairness or other obvious deficiencies, such as unduly
preferential treatment of class representatives or segments of
the class, or excessive compensation of attorneys."  <u>Murillo</u>, 266
F.R.D. at 479 (quoting <u>West v. Circle K Stores, Inc.</u>, 04-cv-438
WBS GGH, 2006 WL 1652598, at *11-12 (E.D. Cal. June 13, 2006)).

        Courts often begin by examining the process that led to
the settlement's terms to ensure that those terms are "the result
of vigorous, arms-length bargaining" and then turn to the
substantive terms of the agreement.  <u>See, e.g.</u>, <u>Murillo</u>, 266
F.R.D. at 479-80; <u>West</u>, 2006 WL 1652598, at *11-12; <u>In re
Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.
2007) ("[P]reliminary approval of a settlement has both a
procedural and a substantive component.").

        1.   <u>Negotiation of the Settlement Agreement</u>

        Following ten months of investigations and informal
discovery, the parties engaged in a full-day mediation on
December 21, 2021.  (<u>See</u> Takvoryan Decl. at ¶ 11-12.)  The
mediation was conducted by an experienced civil mediator.  (<u>See
id.</u> at ¶ 12.)  Plaintiff's counsel represents that the parties
exchanged "extensive information" and "engaged in discussions
regarding their evaluations of the case and various aspects of

1   the case, including but not limited to, the risks and delays of

2   further litigation, the risks to the Parties of proceeding with

3   class certification and/or representative adjudication, the law .

4   . ., the evidence produced and analyzed, and the possibility of

5   appeals." (Id.)  Plaintiff's counsel further represents that the

6   settlement was the result of arms-length bargaining.  (See id.)

7           Given the parties' representation that the settlement

8   reached was the product of arms-length bargaining following

9   extensive informal discovery, the court at this stage does not

10  question that the proposed settlement is the result of informed

11  and non-collusive negotiations between the parties.  See La Fleur

12  v. Med. Mgmt. Int'l, Inc., Civ. No. 5:13-00398, 2014 WL 2967475,

13  at *4 (N.D. Cal. June 25, 2014) ("Settlements reached with the

14  help of a mediator are likely non-collusive.").

15              2.   Amount Recovered and Distribution

16          In determining whether a settlement agreement is

17  substantively fair to the class, the court must balance the value

18  of expected recovery against the value of the settlement offer.

19  See Tableware, 484 F. Supp. 2d at 1080.  This inquiry may involve

20  consideration of the uncertainty class members would face if the

21  case were litigated to trial.  See Ontiveros, 2014 WL 3057506, at

22  *14.

23          The amount of recovery, an average of $1,180 per class

24  member, is certainly within the range of approval for actions of

25  this type.  See, e.g., Vasquez v. Coast Valley Roofing, Inc., 670

26  F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (Wanger, J.) (approving

27  wage-and-hour settlement providing for an average recovery of

28  $1,000); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431,

16

1    440 (E.D. Cal. 2013) (Oberto, J.) (approving wage-and-hour

2    settlement providing for an average recovery of $601.91).

3    Additionally, because the amount class members receive is based

4    on the number of workweeks each class member worked during the

5    Class Period, the court finds that the method of distributing

6    relief to the class is appropriate.

7            However, the amount reserved for PAGA penalties gives

8    the court pause.  Under PAGA, 75% of the civil PAGA penalties are

9    paid to the LWDA.  Cal. Lab. Code § 2699(i).  Though there is no

10   binding authority concerning review of PAGA penalties, the LWDA

11   has stated:

12           the relief provided for under the PAGA [must] be genuine and
             meaningful, consistent with the underlying purpose of the
13           statute to benefit the public and, in the context of a class
             action, the court [must] evaluate whether the settlement
14           meets the standards of being "fundamentally fair,
             reasonable, and adequate" with reference to the public
15           policies underlying the PAGA.

16

17   California Labor and Workforce Development Agency's Comments on

18   Proposed PAGA Settlement ("LWDA Letter"); Castro v. Paragon

19   Indus., Inc., No. 1:19-cv-00755 DAD SKO, 2020 WL 1984240, at *5

20   (E.D. Cal. Apr. 27, 2020) (citing LWDA Letter); O'Connor v. Uber

21   Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (same).

22           Here, the $150,000 reserved for PAGA penalties paid to

23   the LWDA seems significantly higher than is typical.  See, e.g.,

24   Mondrian v. Trius Trucking, Inc., No. 1:19-cv-00884 DAD SKO, 2022

25   WL 2306963, at *3 (E.D. Cal. June 27, 2022) ($7,500 to LWDA out

26   of $995,000 gross settlement); Almanzar v. Home Depot U.S.A.,

27   Inc., No. 2:20-cv-0699 KJN, 2022 WL 2817435, at *2 (E.D. Cal.

28   July 19, 2022) ($28,125 to LWDA out of $750,000 gross

                                    17

1  settlement); Castro v. Paragon Indus., Inc., No. 1:19-cv-00755
2  DAD SKO, 2020 WL 1984240, at *3 (E.D. Cal. Apr. 27, 2020)
3  ($56,250 to LWDA out of $3,750,000 gross settlement); Syed v. M-
4  I, L.L.C., No. 1:12-cv-01718 DAD MJS, 2017 WL 714367, at *13
5  (E.D. Cal. Feb. 22, 2017) ($75,000 to LWDA out of $3,950,000
6  gross settlement); Ontiveros v. Zamora, 303 F.R.D. at 371
7  ($40,000 to LWDA out of $2,000,000 gross settlement); Garcia v.
8  Gordon Trucking, Inc., No. 1:10-cv-0324 AWI SKO, 2012 WL 5364575
9  (E.D. Cal. Oct. 31, 2012) ($7,500 to LWDA out of $3,700,000 gross
10  settlement).  While the proposed amount is presumably linked to
11  the prescribed statutory penalties, counsel did not provide any
12  calculation or explanation that would allow the court to evaluate
13  the appropriateness of the penalty amount.

14          Though the settlement amount is adequate for purposes
15  of approval at this stage, the court emphasizes that this is only
16  a preliminary determination.  At the final fairness hearing,
17  counsel should be prepared to present additional information
18  demonstrating the settlement's adequacy, including the full
19  potential value of the class claims, how the settlement amount
20  compares to that value, what the range of expected recovery is
21  for individual class members, the reasoning behind counsel's
22  determination that the settlement is a fair and adequate result
23  for the class members, and a justification for the amount
24  reserved for PAGA penalties, as well as other information
25  pertinent to the eight Hanlon factors identified above.

26          Counsel are cautioned that because this settlement was
27  reached prior to class certification, it will be subject to
28  heightened scrutiny for purposes of final approval.  See In re

1   *Apple Inc. Device Performance Litig.*, 50 F.4th 769, 2022 WL

2   4492078, at *8 (9th Cir. 2022).  The recommendations of

3   plaintiff's counsel will not be given a presumption of

4   reasonableness, but rather will be subject to close review.  See

5   id. at *9.  The court will particularly scrutinize "any subtle

6   signs that class counsel have allowed pursuit of their own self-

7   interests to infect the negotiations."  See id.  (quoting Roes,

8   944 F.3d at 1043).

9               3.  Attorney's Fees

10              If a negotiated class action settlement includes an

11  award of attorney's fees, that fee award must be evaluated in the

12  overall context of the settlement.  Knisley v. Network Assocs.,

13  312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio v. Best Buy

14  Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (England, J.).

15  The court "ha[s] an independent obligation to ensure that the

16  award, like the settlement itself, is reasonable, even if the

17  parties have already agreed to an amount."  In re Bluetooth

18  Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

19              The settlement agreement provides that plaintiff's

20  counsel will seek a fee award of up to 35% of the gross

21  settlement, or $280,000 based on the gross settlement amount of

22  $800,000.  (Settlement Agreement at 23.)  If the court does not

23  approve the fee award in whole or in part, that will not prevent

24  the settlement agreement from becoming effective or be grounds

25  for termination.  (Id. at 24.)

26              In deciding the attorney's fees motion, the court will

27  have the opportunity to assess whether the requested fee award is

28  reasonable by multiplying a reasonable hourly rate by the number

1  of hours counsel reasonably expended.  See Van Gerwen v. Gurantee
2  Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of
3  this lodestar calculation, the court may consider factors such as
4  the "degree of success" or "results obtained" by plaintiff's
5  counsel.  See Cunningham v. County of Los Angeles, 879 F.2d 481,
6  488 (9th Cir. 1988).  If the court, in ruling on the fees motion,
7  finds that the amount of the settlement warrants a fee award at a
8  rate lower than what plaintiff's counsel requests, then it will
9  reduce the award accordingly.  The court will therefore not
10  evaluate the fee award at length here in considering whether the
11  settlement is adequate.

12       IT IS THEREFORE ORDERED that plaintiff's motion for
13  preliminary certification of a conditional settlement class and
14  preliminary approval of the class action settlement (Docket No.
15  27) be, and the same hereby is, GRANTED.

16       IT IS FURTHER ORDERED THAT:

17       (1) the following class be provisionally certified for the
18  purpose of settlement:

19            (a) All current and former hourly-paid or non-exempt
20  employees who worked for defendant within the State of California
21  at any time during the period from February 24, 2017 through
22  March 23, 2022;

23       (2) the proposed settlement is preliminarily approved as
24  fair, just, reasonable, and adequate to the members of the
25  settlement class, subject to further consideration at the final
26  fairness hearing after distribution of notice to members of the
27  settlement class;

28       (3) for purposes of carrying out the terms of the settlement

only:

(a) Tricilla Griffin is appointed as the representative of the settlement class and is provisionally found to be an adequate representative within the meaning of Federal Rule of Civil Procedure 23;

(b) the law firm of Lawyers for Justice, PC is provisionally found to be a fair and adequate representative of the settlement class and is appointed as class counsel for the purposes of representing the settlement class conditionally certified in this Order;

(4) ILYM Group is appointed as the Settlement Administrator;

(5) the form and content of the proposed Notice of Class Action Settlement (Ex. A to Settlement Agreement (Docket No. 27-1 at 54-60)) is approved, except to the extent that it must be updated to reflect dates and deadlines specified in this Order;

(6) no later than fifteen (15) calendar days from the date this Order is signed, defendant's counsel shall provide the Settlement Administrator with the following information about each class member: full name; last known address; last known telephone number; dates of employment with defendant as an hourly-paid or non-exempt employee; the number of workweeks worked during the Class Period; the number of workweeks worked during the PAGA Period; Social Security number; and the last known email address;

(7) no later than ten (10) calendar days from the date defendant submits the contact information to the Settlement Administrator, it shall mail a Notice of Class Action Settlement to all members of the settlement class via first class mail.  If

a Notice is returned to the Settlement Administrator with a
forwarding address, the Settlement Administrator will re-send the
Notice to the forwarding address.  If no forwarding address is
provided, the Settlement Administrator will attempt to locate a
more current address within three (3) business days of receipt of
the returned mail;

(8) no later than sixty (60) days from the date Settlement
Administrator mails the Notice of Class Action Settlement, though
in the case of a re-mailed notice the deadline will be extended
by fifteen (15) days, any member of the settlement class who
intends to dispute the number of workweeks credited to him or
object to, comment upon, or opt out of the settlement shall mail
written notice of that intent to the Settlement Administrator
pursuant to the instructions in the Notice of Class Action
Settlement;

(9) A final fairness hearing shall be set to occur before
this Court on May 30, 2023, at 1:30 p.m. in Courtroom 5 of the
Robert T. Matsui United States Courthouse, 501 I Street,
Sacramento, California, to determine whether the proposed
settlement is fair, reasonable, and adequate and should be
approved by this court; whether the settlement class's claims
should be dismissed with prejudice and judgment entered upon
final approval of the settlement; whether final class
certification is appropriate; and to consider class counsel's
applications for attorney's fees, costs, and an incentive award
for the class representative. The court may continue the final
fairness hearing without further notice to the members of the
class;

1    (10) no later than twenty-eight (28) days before the final

2  fairness hearing, class counsel shall file with this court a

3  petition for an award of attorney's fees and costs.  Any

4  objections or responses to the petition shall be filed no later

5  than fourteen (14) days before the final fairness hearing.  Class

6  counsel may file a reply to any objections no later than seven

7  (7) days before the final fairness hearing;

8    (11) no later than twenty-eight (28) days before the final

9  fairness hearing, class counsel shall file and serve upon the

10  court and defendant's counsel all papers in support of the

11  settlement, the incentive award for the class representative, and

12  any award for attorney's fees and costs;

13    (12) no later than twenty-eight (28) days before the final

14  fairness hearing, the Settlement Administrator shall prepare, and

15  class counsel shall file and serve upon the court and defendant's

16  counsel, a declaration setting forth the services rendered, proof

17  of mailing, a list of all class members who have opted out of the

18  settlement, a list of all class members who have commented upon

19  or objected to the settlement;

20    (13) any person who has standing to object to the terms of

21  the proposed settlement may appear at the final fairness hearing

22  (themselves or through counsel) and be heard to the extent

23  allowed by the court in support of, or in opposition to, (a) the

24  fairness, reasonableness, and adequacy of the proposed

25  settlement, (b) the requested award of attorney's fees,

26  reimbursement of costs, and incentive award to the class

27  representative, and/or (c) the propriety of class certification.

28  To be heard in opposition at the final fairness hearing, a person

must, no later than sixty (60) days from the date the Settlement Administrator mails the Notice of Class Action Settlement, (a) serve by hand or through the mails written notice of his or her intention to appear, stating the name and case number of this action and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel and counsel for defendant, and (b) file said appearance, objections, papers, and briefs with the court, together with proof of service of all such documents upon counsel for the parties.

Responses to any such objections shall be served by hand or through the mails on the objectors, or on the objector's counsel if there is any, and filed with the court no later than fourteen (14) calendar days before the final fairness hearing. Objectors may file optional replies no later than seven (7) calendar days before the final fairness hearing in the same manner described above.  Any settlement class member who does not make his or her objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed settlement, the judgment entered, and the award of attorney's fees, costs, and an incentive award to the class representative unless otherwise ordered by the court;

(14) pending final determination of whether the settlement should be ultimately approved, the court preliminarily enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing or prosecuting any claims, suits, or administrative proceedings regarding claims to be released by the settlement.

1   Dated:   November 8, 2022

2

3   WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28