1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   TRICILLA GRIFFIN, individually,        No. 2:21-cv-0885 WBS KJN
     and on behalf of other members
13   of the general public similarly
     situated and on behalf of other
14   aggrieved employees pursuant to        ORDER RE: PLAINTIFF'S MOTION
     the California Private Attorneys       FOR FINAL APPROVAL OF CLASS
15   General Act,                           ACTION SETTLEMENT AND MOTION
                                            FOR ATTORNEYS' FEES, COSTS,
16                   Plaintiff,             AND REPRESENTATIVE SERVICE
                                            PAYMENT
17        v.

18   CONSOLIDATED COMMUNICATIONS, an
     unknown business entity; and
19   DOES 1 through 100, inclusive,

20                   Defendants.

21

22                              ----oo0oo----

23        Plaintiff Tricilla Griffin, individually and on behalf

24   of all other similarly situated employees, brought this putative

25   class action against defendant Consolidated Communications

26   alleging wage and hour violations under California law.  (See

27   First Am. Compl. (Docket No. 1-1).)  Before the court are

28   plaintiff's motion for final approval of a class action

                                   1

1  settlement (See Mot. for Final Approval ("Mot.") (Docket No. 33))

2  and motion for attorneys' fees, costs, and enhancement payment

3  (Docket No. 34), both of which are unopposed.

4          The Ninth Circuit has declared a strong judicial policy

5  favoring settlement of class actions.  Class Plaintiffs v. City

6  of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also

7  Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)

8  ("We put a good deal of stock in the product of an arms-length,

9  non-collusive, negotiated resolution[.]") (citation omitted).

10 Rule 23(e) provides that "[t]he claims, issues, or defenses of a

11 certified class may be settled . . . only with the court's

12 approval."  Fed. R. Civ. P. 23(e).

13         "Approval under 23(e) involves a two-step process in

14 which the Court first determines whether a proposed class action

15 settlement deserves preliminary approval and then, after notice

16 is given to class members, whether final approval is warranted."

17 Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,

18 525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),

19 § 30.41 (1995)).  This court satisfied step one by granting

20 plaintiff's unopposed motion for preliminary approval of class

21 action settlement on November 9, 2022.  (Order Granting Prelim.

22 Approval (Docket No. 32).)  The Settlement Administrator

23 subsequently mailed notice of the settlement to the class

24 members.

25         A final fairness hearing was held on May 30, 2023.  No

26 class members appeared at the hearing to object to the

27 settlement.  The court will now consider whether final approval

28 is merited by evaluating: (1) the treatment of this litigation as

1   a class action and (2) the terms of the settlement.  See Diaz v.

2   Tr. Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir.

3   1989).

4   I.   Class Certification

5          The parties define the class as "[a]ll current and

6   former hourly-paid or non-exempt employees who worked for

7   Defendant within the State of California at any time during the

8   period from February 24, 2017 through March 23, 2022 ["Class

9   Period]."  (Settlement Agreement (Docket No. 27-1 at 24-53) at

10  2.)  For purposes of the PAGA claim, the relevant time period is

11  February 19, 2020 to March 23, 2022 ("PAGA Period").  (Settlement

12  Agreement at 5.)

13         To be certified, the putative class must satisfy the

14  requirements of Federal Rules of Civil Procedure 23(a) and 23(b).

15  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013).

16         A.   Rule 23(a)

17         Rule 23(a) restricts class actions to cases where: "(1)

18  the class is so numerous that joinder of all members is

19  impracticable [numerosity]; (2) there are questions of law or

20  fact common to the class [commonality]; (3) the claims or

21  defenses of the representative parties are typical of the claims

22  or defenses of the class [typicality]; and (4) the representative

23  parties will fairly and adequately protect the interests of the

24  class [adequacy of representation]."  See Fed. R. Civ. P. 23(a).

25         In the court's order granting preliminary approval of

26  the settlement, the court found that the putative class satisfied

27  the Rule 23(a) requirements.  (See Order Granting Prelim.

28  Approval at 5-10.)  The court is unaware of any changes that

3

would affect its conclusion that the putative class satisfies the Rule 23(a) requirements, and the parties have not indicated that they are aware of any such developments.  The court therefore finds that the class definition proposed by plaintiff meets the requirements of Rule 23(a).

      B.   <u>Rule 23(b)</u>

        After fulfilling the threshold requirements of Rule 23(a), the proposed class must satisfy the requirements of one of the three subdivisions of Rule 23(b).  <u>Leyva</u>, 716 F.3d at 512. Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

        In its order granting preliminary approval of the settlement, the court found that both the predominance and superiority prerequisites of Rule 23(b)(3) were satisfied. (Order Granting Prelim. Approval at 10-12.)  The court is unaware of any changes that would affect its conclusion that Rule 23(b)(3) is satisfied.  Because the settlement class satisfies both Rule 23(a) and 23(b)(3), the court will grant final class certification of this action.

      C.   <u>Rule 23(c)(2) Notice Requirements</u>

        If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 172-77 (1974)).  Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The notice explains the proceedings, defines the scope of the class, and explains what the settlement provides and how much each class member can expect to receive in compensation. (Settlement Notice (Docket No. 33-3 at 6-11) at 1-3.)  The notice further explains the opt-out procedure, the procedure for objecting to the settlement, and the date and location of the final approval hearing.  (See id. at 4-5.)  The content of the notice therefore satisfies Rule 23(c)(2)(B).  See Fed. R. Civ. P. 23(c)(2)(B); Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The parties selected ILYM Group ("ILYM") to serve as the Settlement Administrator.  (Settlement Agreement at 13.) Defendant timely provided ILYM with the class contact information and data, which included the class members' full names, social security numbers, last known mailing addresses, and the total number of applicable workweeks.  (See Decl. of Madely Nava

1  (Docket No. 33-3) ¶ 5.)  The class list contained 279 members.

2  (Id.)  The Settlement Administrator delivered notice of the

3  settlement via mail.  (Id. ¶ 7.)  Of the twenty notices returned

4  as undeliverable, the Settlement Administrator acquired sixteen

5  new mailing addresses via computerized skip trace, leaving four

6  of the 279 notices undelivered.  (Id. ¶¶ 8-10.)  The Settlement

7  Administrator did not receive any objections or requests for

8  exclusion.  (Id. ¶¶ 11-12.)

9        Although the court maintains the belief that counsel

10  could have been more thorough in devising procedures for

11  providing notice to class members, following oral argument the

12  court is satisfied by the Settlement Administrator's efforts.

13  II.  Final Settlement Approval

14        Having determined that class treatment is warranted,

15  the court must now address whether the terms of the parties'

16  settlement appear fair, adequate, and reasonable.  See Fed. R.

17  Civ. P. 23(e)(2).  To determine the fairness, adequacy, and

18  reasonableness of the agreement, Rule 23(e) requires the court to

19  consider four factors: "(1) the class representatives and class

20  counsel have adequately represented the class; (2) the proposal

21  was negotiated at arm's length; (3) the relief provided for the

22  class is adequate; and (4) the proposal treats class members

23  equitably relative to each other."  Id.  The Ninth Circuit has

24  also identified eight additional factors the court may consider,

25  many of which overlap substantially with Rule 23(e)'s four

26  factors:

27        The strength of the plaintiff's case; the risk,
        expense, complexity, and likely duration of
28        further litigation; the risk of maintaining class

6

> action status throughout the trial; the amount
> offered in settlement; the extent of discovery
> completed and the stage of the proceedings; the
> experience and views of counsel; the presence of
> a governmental participant; and the reaction of
> the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).[1]

A.   Adequate Representation

The court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) . . . ." Hudson v. Libre Tech., Inc., No. 3:18-cv-1371 GPC KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting 4 Newberg on Class Actions § 13:48 (5th ed.)); see also In re GSE Bonds Antitr. Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiries under Rule 23(a)(4) and Rule

---

[1]   Because claims under PAGA are "a type of qui tam action" in which an employee brings a claim as an agent or proxy of the state's labor law enforcement agencies, the court must also "review and approve" settlement of plaintiff's and other class members' PAGA claims along with their class claims. See Cal. Lab. Code § 2669(k)(2); Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d 425, 435-36 (9th Cir. 2015).

Though "PAGA does not establish a standard for evaluating PAGA settlements," Rodriguez v. RCO Reforesting, Inc., No. 2:16-CV-2523 WBS DMC, 2019 WL 331159, at *4 (E.D. Cal. Jan. 25, 2019) (citing Smith v. H.F.D. No. 55, Inc., No. 2:15-cv-01293 KJM KJN, 2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of district courts have applied the eight Hanlon factors, listed above, to evaluate PAGA settlements. See, e.g., Smith, 2018 WL 1899912, at *2; Ramirez v. Benito Valley Farms, LLC, No. 16-cv-04708 LHK, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017); O'Connor v. Uber Techs., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). "Many of these factors are not unique to class action lawsuits and bear on whether a settlement is fair and has been reached through an adequate adversarial process." See Ramirez, 2017 WL 3670794, at *3. Thus, the court finds that these factors will also govern its review of the PAGA settlement. See id.

1   23(e)(2)(A)).

2          Because the Court has found that the proposed class
3   satisfies Rule 23(a)(4) for purposes of class certification, the
4   adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson,
5   2020 WL 2467060, at *5.

6          B.   Negotiation of the Settlement Agreement

7          Following substantial investigations and informal
8   discovery, the parties engaged in a full-day mediation with a
9   mediator experienced in complex labor and employment matters.
10  (See Decl. of Edwin Aiwazian ("Aiwazian Decl.") (Docket No. 33-1)
11  ¶ 8.)  Plaintiff's counsel represents that the parties analyzed
12  "a large volume of information, documents, and data" obtained
13  from plaintiff and defendant, and that settlement negotiations
14  involved "discussion of all aspects of the case, including but
15  not limited to, the risks and delays of further litigation, the
16  risks to the parties of proceeding with class certification and
17  trial, the law [applicable to the claims] . . ., the evidence
18  produced and analyzed, and the possibility of appeals . . . ."
19  (See id.)  Plaintiff's counsel further represents that the
20  settlement was the result of arms-length bargaining.  (See id.)

21         Given counsel's representation that the settlement
22  reached was the product of arms-length bargaining following
23  extensive informal discovery and with the help of an experienced
24  mediator, this factor weighs in favor of final approval.  See La
25  Fleur v. Med. Mgmt. Int'l, Inc., No. 5:13-cv-00398, 2014 WL
26  2967475, at *4 (N.D. Cal. June 25, 2014) ("Settlements reached
27  with the help of a mediator are likely non-collusive.").

28         C.   Adequate Relief

1      In determining whether a settlement agreement provides
2 adequate relief for the class, the court must "take into account
3 (i) the costs, risks, and delay of trial and appeal; (ii) the
4 effectiveness of any proposed method of distributing relief to
5 the class, including the method of processing class-member
6 claims; (iii) the terms of any proposed award of attorney's fees,
7 including timing of payment; and (iv) any [other] agreement[s]"
8 made in connection with the proposal.  See Fed. R. Civ. P.
9 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-
10 AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

11     The court notes that, in evaluating whether the
12 settlement provides adequate relief, it must consider several of
13 the same factors as outlined in Hanlon, including the strength of
14 the plaintiff's case, the risk, expense, complexity, and likely
15 duration of further litigation, the risk of maintaining class
16 action status throughout the trial, and the amount offered in
17 settlement.  See Hanlon, 150 F.3d at 1026.

18     In determining whether a settlement agreement is
19 substantively fair to class members, the court must balance the
20 value of expected recovery against the value of the settlement
21 offer.  See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078,
22 1080 (N.D. Cal. 2007).  When a settlement was reached prior to
23 class certification, it is subject to heightened scrutiny for
24 purposes of final approval.  See In re Apple Inc. Device
25 Performance Litig., 50 F.4th 769, 782 (9th Cir. 2022).  The
26 recommendations of plaintiff's counsel will not be given a
27 presumption of reasonableness, but rather will be subject to
28 close review.  See id. at 782-83.  The court will particularly

1  scrutinize "any subtle signs that class counsel have allowed
2  pursuit of their own self-interests to infect the negotiations."
3  See id. at 782 (quoting Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d
4  1035, 1043 (9th Cir. 2019)).

5         The parties propose a gross settlement amount of
6  $800,000, which includes the following: (1) a $7,500 incentive
7  award to plaintiff; (2) attorneys' fees of 35% of the gross
8  settlement amount, or $280,000, and reimbursement of litigation
9  costs and expenses of $8,863; (3) settlement administration costs
10 of $15,000; and (4) $200,000 for PAGA penalties, of which 75%
11 will be distributed to the Labor and Workforce Development Agency
12 ("LWDA") and 25% will be distributed to individual aggrieved
13 employees based on their number of workweeks during the PAGA
14 period.  (See Mot. at 4; Settlement Agreement.)  This leaves a
15 net settlement amount of $288,636.27 to be distributed to class
16 members based on their number of workweeks.  (See id.)

17        Based on these figures, the average payment per class
18 member will be $1,065.08.  Plaintiff estimates that the claims
19 are worth up to $9,663,057.16.  (See Suppl. Decl. of Edwin
20 Aiwazian (Docket No. 36).)  The gross settlement amount
21 constitutes approximately 8.3% of that maximum valuation.  While
22 this percentage is on the lower end of the range of typical
23 approval, plaintiff has adequately justified this figure.

24        Plaintiff faced numerous risks in the litigation,
25 including proving all elements of the claims, obtaining and
26 maintaining class certification, establishing liability, and the
27 costliness of litigation on these issues.  (See id. at 4.)
28 Defendant "vigorously challenged" the likelihood of plaintiff

succeeding on any of her claims and contended that its employment practices were fully compliant with California law.  (See id. at 14.)  Defendant also argued, inter alia, that individual issues predominated such that class certification would be inappropriate on certain claims; that plaintiff lacked standing and was an inadequate class representative; that many class members executed valid meal period waivers, which defendant produced; that defendant did not "willfully" fail to pay wages such that waiting-time penalties were due; that class members were not injured by any recordkeeping violations; and that unreimbursed business expenses were not "necessary" such that it was required to pay them.  (See id. at 5-13.)  Defendant also represented that approximately 36.13% of the class members were covered by arbitration agreements.  (See id. at 4.)

Investigation uncovered specific factual weaknesses in plaintiff's case.  For instance, with respect to the claim for failure to pay wages, plaintiff's investigation revealed that 95.09% of the shifts analyzed gave no indication of unpaid work time.  (Id. at 3.)  With respect to the claim for noncompliant meal periods, plaintiff's investigation revealed that 97.83% of shifts analyzed had a meal period (whether fully compliant or not), and 84.14% of shifts had no recorded meal period violations.  (Id.)  The UCL and PAGA claims are derivative of the underlying wage and hour violations, and thus are subject to the same risks and weaknesses discussed above.

In light of the risks associated with further litigation and the relative strength of defendants' arguments, the court finds that the value of the settlement counsels in favor of granting

1   final approval.  The court further finds the method of processing
2   class member claims to be adequate.  Each class member's individual
3   share of the settlement is proportional to the number of weeks
4   worked for defendant during the time period covered by the
5   Settlement Agreement.  The court is also satisfied that counsel's
6   requested fees are reasonable and support approval of the
7   settlement, which it will address in greater detail below.

8           D.   Equitable Treatment of Class Members

9           Finally, the court must consider whether the Settlement
10  Agreement "treats class members equitably relative to each
11  other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the court
12  determines whether the settlement "improperly grant[s]
13  preferential treatment to class representatives or segments of
14  the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,
15  484 F. Supp. at 1079.

16          Here, the Settlement Agreement does not improperly
17  discriminate between any segments of the class, as all class
18  members are entitled to monetary relief based on the number of
19  compensable workweeks they spent working for defendants.  (See
20  Settlement Agreement at 5-6.)

21          While the Settlement Agreement allows plaintiff to seek
22  an incentive award of $7,500, plaintiff has submitted evidence
23  documenting her time and effort spent on this case, which, as
24  discussed further below, has satisfied the court that her
25  additional compensation above other class members is justified.
26  See Hudson, 2020 WL 2467060, at *9.  The court therefore finds
27  that the settlement treats class members equitably.  See Fed. R.
28  Civ. P. 23(e)(D).

                                12

1          E.    Remaining Staton Factors

2              In addition to the Staton factors already considered as

3    part of the court's analysis under Rule 23(e)(A)-(D), the court

4    must also examine "the extent of the discovery completed . . .,

5    the presence of government participation, and the reaction of

6    class members to the proposed settlement."  Staton, 327 F.3d at

7    959.

8              Through investigation and informal discovery,

9    plaintiffs obtained "a large volume of information, documents,

10   and data," including employment records, payroll records,

11   employee handbooks, job descriptions, internal memoranda and

12   policies, arbitration agreements, meal period waivers, wage

13   statements, and reimbursement forms, that appear to have allowed

14   the parties to adequately assess the value of the claims.  (See

15   Aiwazian Decl. ¶ 6.)  This factor thus weighs in favor of final

16   approval of the settlement.

17             The seventh Staton factor, pertaining to government

18   participation, also weighs in favor of approval.  See Staton, 327

19   F.3d at 959.  Under PAGA, "[t]he proposed settlement [must be]

20   submitted to the [LWDA] at the same time that it is submitted to

21   the court."  Cal. Lab. Code § 2669(k)(2).  As of the date of this

22   order, the LWDA has not sought to intervene or otherwise objected

23   to the PAGA settlement.  This factor therefore weights in favor

24   of final approval of the settlement.

25             The eighth Staton factor, the reaction of the class

26   members to the proposed settlement, also weighs in favor of final

27   approval, as there have been no objections or requests for

28   exclusion from class members.  See Staton, 327 F.3d at 959.

1    In sum, the four factors that the court must evaluate

2    under Rule 23(e) and the eight Staton factors, taken as a whole,

3    weigh in favor of approving the settlement.  The court will

4    therefore grant final approval of the Settlement Agreement.

5    III. Attorneys' Fees

6    Federal Rule of Civil Procedure 23(h) provides, "[i]n a

7    certified class action, the court may award reasonable attorney's

8    fees and nontaxable costs that are authorized by law or by the

9    parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated

10   class action settlement includes an award of attorneys' fees,

11   that fee award must be evaluated in the overall context of the

12   settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th

13   Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443,

14   455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an

15   independent obligation to ensure that the award, like the

16   settlement itself, is reasonable, even if the parties have

17   already agreed to an amount."  Bluetooth Headset, 654 F.3d at

18   941.

19   "Under the 'common fund' doctrine, 'a litigant or a

20   lawyer who recovers a common fund for the benefit of persons

21   other than himself or his client is entitled to a reasonable

22   [attorneys'] fee from the fund as a whole.'"  Staton v. Boeing

23   Co., 327 F.3d 938, 969 (9th Cir. 2003) (quoting Boeing Co. v. Van

24   Gemert, 444 U.S. 472, 478 (1980)).  In common fund cases, the

25   district court has discretion to determine the amount of

26   attorneys' fees to be drawn from the fund by employing either the

27   percentage method or the lodestar method.  Id.  The court may

28   also use one method as a "cross-check[ ]" upon the other method.

14

1    See <u>Bluetooth Headset</u>, 654 F.3d at 944.

2            Counsel represents that the settlement amount, which
3    averages $1,065.08 per class member, represents a favorable
4    result for the class that will bring meaningful relief.  A review
5    of wage and hour class action settlements in this district
6    confirms that this appears to be a favorable recovery for class
7    members that will be available without further delay.  See, e.g.,
8    <u>Cooley v. Indian River Transp. Co.</u>, No. 1:18-cv-00491 WBS, 2019
9    WL 2077029 (E.D. Cal. May 10, 2019) (finding that $450.14
10   recovery per truck driver class member was a "favorable" result);
11   <u>Ontiveros v. Zamora</u>, No. 2:08-cv-00567 WBS DAD, 2014 WL 3057506
12   (E.D. Cal. July 7, 2014) (observing that an average recovery of
13   $6,000 was "a generous amount" and citing cases approving lower
14   per-class-member averages between $601.91 and $1,000.00).

15           Like other complex employment class actions, this case
16   presented both counsel and the class with a risk of no recovery
17   at all, as already discussed above.  Plaintiff's counsel took on
18   this matter on a contingency basis.  (<u>See</u> Aiwazian Decl. ¶ 9.)
19   The nature of contingency work inherently carries risks that
20   counsel will sometimes recovers very little to nothing at all,
21   even for cases that may be meritorious.  See <u>Kimbo v. MXD Group,</u>
22   <u>Inc.</u>, No. 2:19-cv-00166 WBS KNJ, 2021 WL 492493, at *7 (E.D. Cal.
23   Feb. 10, 2021).  Where counsel do succeed in vindicating
24   statutory and employment rights on behalf of a class of
25   employees, they depend on recovering a reasonable percentage-of-
26   the-fund fee award to enable them to take on similar risks in
27   future cases.  See <u>id.</u>  Plaintiff's counsel argues that, in light
28   of the strong result and substantial risk taken in this case, a

1   35% fee, as requested here, is reasonable.

2          The Ninth Circuit has established 25% of the fund as
3   the "benchmark" award that should be given in common fund cases.
4   Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,
5   1311 (9th Cir. 1990).  As this court has explained, "a review of
6   California cases . . . reveals that courts usually award
7   attorneys' fees in the 30-40% range in wage and hour class
8   actions that result in recovery of a common fun[d] under $10
9   million."  Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020
10  WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33% of
11  settlement fund); see also Osegueda v. N. Cal. Inalliance, No.
12  18-cv-00835 WBS EFB, 2020 WL 4194055, at *16 (E.D. Cal. July 21,
13  2020) (same); Cooley, 2019 WL 2077029, at *20 (fee award of 33%
14  of the common fund in class action alleging missed meal and rest
15  breaks for class of truck drivers).  Given that the requested fee
16  is in line with the typical practice in the Ninth Circuit and in
17  this district, the court agrees that plaintiff's counsel's
18  requested percentage of the common fund is reasonable, especially
19  when viewed in light of the recovery obtained on behalf of the
20  class and the risks undertaken by plaintiff's counsel in this
21  case.

22          "Calculation of the lodestar, which measures the
23  lawyers' investment of time in the litigation, provides a check
24  on the reasonableness of the percentage award."  Vizcaino v.
25  Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).

26          Here, a lodestar cross-check confirms the
27  reasonableness of the requested award.  Plaintiff's counsel
28  maintained contemporaneous billing logs which reflect time billed

1   in one-tenth of an hour increments.  (See Ex. A to Aiwazian

2   Decl.)  Counsel represents that attorneys at Lawyers for Justice,

3   PC have dedicated 391.3 hours of work to this case.  (See

4   Aiwazian Decl. ¶ 11.)  Counsel applies a blended rate of $725 per

5   hour to arrive at the lodestar figure.  (See id. ¶ 12.)  The firm

6   specializes in wage and hour matters and class action cases, and

7   counsel represents that comparable hourly rates have been

8   approved by multiple federal and state courts in California.

9   (See id. ¶ 12.)  Based on 391.3 hours billed at an hourly rate of

10  $725, the lodestar figure is $283,692.50.  (See Mot. at 16;

11  Aiwazian Decl. ¶ 11-12.)  This figure is nearly identical to the

12  requested percentage-of-the-fund fees without the application of

13  a multiplier, confirming the reasonableness of the requested

14  award.  Cf. Vizcaino, 290 F.3d at 1051 (affirming fee award with

15  lodestar cross-check multiplier of 3.65).

16      Accordingly, the court finds the requested fees to be

17  reasonable and will grant counsel's motion for attorneys' fees.

18      D.   Costs

19      "There is no doubt that an attorney who has created a

20  common fund for the benefit of the class is entitled to

21  reimbursement of reasonable litigation expenses from that fund."

22  In re Heritage Bond Litig., No. 02-cv-1475, 2005 WL 1594403, at

23  *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that

24  plaintiff's counsel shall be entitled to recover reasonable

25  litigation costs, not to exceed $24,000.  (Settlement Agreement

26  at 23.)  Counsel's litigation expenses and costs are $8,863.75.

27  (Aiwazian Decl. ¶ 19.)  These expenses include mailing and

28  postage, filing fees, and document service.  (See Ex. B to

17

1  Aiwazian Decl.)  The court finds these are reasonable litigation

2  expenses.  Therefore, the court will grant class counsel's

3  request for costs in the amount of $8,863.75.

4      E.    Representative Service Award

5          "Incentive awards are fairly typical in class action

6  cases." Rodriguez, 563 F.3d at 958.  "[They] are intended to

7  compensate class representatives for work done on behalf of the

8  class, to make up for financial or reputational risk undertaken

9  in bringing the action, and, sometimes, to recognize their

10  willingness to act as a private attorney general." Id. at 958-

11  59.

12          Nevertheless, the Ninth Circuit has cautioned that

13  "district courts must be vigilant in scrutinizing all incentive

14  awards to determine whether they destroy the adequacy of the

15  class representatives . . . ." Radcliffe v. Experian Info.

16  Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In

17  assessing the reasonableness of incentive payments, the court

18  should consider "the actions the plaintiff has taken to protect

19  the interests of the class, the degree to which the class has

20  benefitted from those actions" and "the amount of time and effort

21  the plaintiff expended in pursuing the litigation." Staton, 327

22  F.3d at 977 (citation omitted).  The court must balance "the

23  number of named plaintiffs receiving incentive payments, the

24  proportion of the payments relative to the settlement amount, and

25  the size of each payment." Id.

26          In the Ninth Circuit, an incentive award of $5,000 is

27  presumptively reasonable. Davis v. Brown Shoe Co., Inc., No.

28  1:13-cv-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,

1  2015) (citing <u>Harris v. Vector Marketing Corp.</u>, No. 08-cv-5198

2  EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting

3  cases)).  The single named plaintiff seeks an incentive payment

4  of $7,500.

5        Plaintiff represents that she has expended

6  approximately 50 hours of her time in bringing this action and

7  seeing it through to settlement.  (<u>See</u> Decl. of Tricilla Griffin

8  (Docket No. 33-2).)  In light of plaintiff's efforts and the

9  risks incurred in bringing this action, the court finds her

10  requested incentive award of $7,500 to be reasonable and will

11  approve the award.

12  II.  <u>Conclusion</u>

13        Based on the foregoing, the court will grant final

14  certification of the settlement class and will approve the

15  settlement set forth in the Settlement Agreement as fair,

16  reasonable, and adequate.  The Settlement Agreement shall be

17  binding upon all participating class members who did not exclude

18  themselves.

19        IT IS THEREFORE ORDERED that plaintiff's unopposed

20  motion for final approval of the parties' class action settlement

21  (Docket No. 33) and motion for attorneys' fees, costs, and class

22  representative service payment (Docket No. 34) be, and the same

23  hereby are, GRANTED.

24        IT IS FURTHER ORDERED THAT:

25        (1) Solely for the purpose of this settlement, and

26  pursuant to Federal Rule of Civil Procedure 23, the court hereby

27  certifies the following class: all current and former hourly-paid

28  or non-exempt employees who worked for defendant within the state

1   of California at any time during the period from February 24,
2   2017 through March 23, 2022.

3          (2) The court appoints the named plaintiff Tricilla
4   Griffin as class representative and finds that she meets the
5   requirements of Rule 23;

6          (3) The court appoints the law firm of Lawyers for
7   Justice, PC as class counsel and finds that it meets the
8   requirements of Rule 23;

9          (4) The settlement agreement's plan for class notice
10  satisfies the requirements of due process and Rule 23.  The plan
11  is approved and adopted. The notice to the class complies with
12  Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

13         (5) The court finds that the parties and their counsel
14  took appropriate efforts to locate and inform all class members
15  of the settlement.  No employees have requested to be excluded
16  from the class.  Given that no class member filed an objection to
17  the settlement, the court finds that no additional notice to the
18  class is necessary;

19         (6) As of the date of the entry of this order,
20  plaintiff and all class members who have not timely opted out of
21  this settlement hereby do and shall be deemed to have fully,
22  finally, and forever released, settled, compromised,
23  relinquished, and discharged defendants of and from any and all
24  settled claims, pursuant to the release provisions stated in the
25  parties' settlement agreement;

26         (7) Plaintiff's counsel is entitled to fees in the
27  amount of $280,000, and litigation costs in the amount of
28  $8,863.75;

1         (8) ILYM Group is entitled to administration costs in

2 the amount of $15,000;

3         (9)  Plaintiff Tricilla Griffin is entitled to an

4 incentive award in the amount of $7,500;

5         (10) $150,000 from the gross settlement amount shall be

6 paid to the California Labor and Workforce Development Agency in

7 satisfaction of defendant's alleged penalties under the Private

8 Attorneys General Act;

9         (11) The remaining settlement funds shall be paid to

10 participating class members and aggrieved employees in accordance

11 with the terms of the Settlement Agreement; and

12         (12) This action is dismissed with prejudice.  However,

13 without affecting the finality of this Order, the court shall

14 retain continuing jurisdiction over the interpretation,

15 implementation, and enforcement of the Settlement Agreement with

16 respect to all parties to this action and their counsel of

17 record.

18 Dated:  June 5, 2023

19 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28